## STATE v. CHRISTOPHER A. BLAND.

*Manslaughter—Police Officer.*

The law does not clothe a police officer with authority to judge arbitrarily of the necessity of killing a prisoner to secure him, or of killing a person to prevent a rescue, and it must be left to the jury to pass on the necessity for such killing.

(*State* v. *Stalcap*, 2 Ired., 50; *State* v. *McNinch*, 90 N. C., 696; *State* v. *Pendergrass*, 2 D. & B., 365; cited and approved).

This was an INDICTMENT FOR MANSLAUGHTER, tried before *Merrimon, Judge,* at January Term, 1887, of PITT Superior Court.

The defendant was charged with the felonious slaying of one John Cannon.

There was no objection to the admission of testimony, but the accused was a police officer of the town of Bell's Ferry, and the evidence showed that the homicide was committed while in discharge of his duty as such, and the only point insisted upon was, that his Honor in his charge to the jury, failed to draw a proper distinction between a homicide committed by an officer in the discharge of his duty in arresting and confining prisoners, and one committed by a private person.

The evidence and charge of the Court are set out at length in the record, but no exception is taken to the evidence, and the charge of his Honor complained of, sufficiently refers to it to render the exceptions intelligible, without reporting it here.

After charging the jury that they must be satisfied beyond a reasonable doubt that the death of the deceased was caused by the blow admitted to have been inflicted by the prisoner, or they must acquit, he proceeds as follows: "If the jury shall be satisfied by the evidence, that the defendant was at

the time a police officer of Bell's Ferry, admitted to be an incorporated town, and that Tom Brooks was in said town at the time, engaged in a difficulty with a negro, or was drunk and disorderly in the presence of the defendant, then the defendant not only had the right, but it was his duty to arrest him, without a warrant, and if he did arrest him under such circumstances, he had the right, and it was his duty, to keep him in custody, and to this end to commit him to the place of confinement used by the town, until he could conveniently be carried before the mayor of the town ; and if while he had him under arrest, the deceased attempted to rescue him, or to prevent the defendant from using the necessary means to keep him in custody until such time as he might conveniently take him before the mayor for trial, and if in order to keep Brooks in custody and prevent his rescue by deceased, it was necessary for the defendant to strike the deceased with the " billy," and defendant in striking the blow used no more force than was necessary, (and in estimating the necessary force in this view of the case, the jury need not be very nice, or as is sometimes said, weigh in gold scales,) the defendant will be justified or excused, and the jury will return a verdict of not guilty. But when the defendant arrested Brooks, it was his duty to carry him before the mayor for trial as soon as he conveniently might, and if he could have done so, immediately, and Brooks at the time was not too much intoxicated, but in a condition to be tried by the mayor, then the defendant had no right to carry him to the place of confinement used by the town, and unless defendant acted honestly according to his sense of right, and not under a pretext of duty in starting with Brooks to such place, if he struck the deceased the fatal blow to prevent the deceased from defeating his, defendant's, purpose, to carry Brooks to such place of custody, he would be guilty of manslaughter.

" In any view of the case, the jury must be satisfied from the testimony, that it was absolutely necessary for the defendant to strike the deceased, for it is *necessity* that distinguishes between manslaughter and excusable homicide, and it is for the jury to say from the testimony, whether the defendant acted honestly, and not under a pretext of duty, in starting with Brooks to a place of confinement used by the town, instead of to the mayor.

" If at the time the defendant struck the deceased, the deceased was coming at him with a stick drawn upon him, and defendant had reason to believe, and did believe, he was in danger of losing his life, or suffering great bodily harm at the hands of the deceased, and struck because it was necessary for him to so protect his life or himself from enormous bodily harm, and there was no other way of saving his life or avoiding such harm, he would be justified. But in this view of the case, the jury must be satisfied from the testimony, that unless the defendant had struck the deceased, he, the defendant, was in imminent and manifest danger of losing his life, or suffering enormous bodily harm, or that he had reasonable grounds to believe, and did believe, that he was in such danger.

" In order to enable the jury to form a correct judgment whether the defendant at the time was in such danger or not, they may, as far as possible from the testimony, place themselves in the defendant's situation, surrounded with the appearances of danger, if there were such appearances, with the same degree of knowledge of the deceased's probable purpose which the defendant possessed, if he possessed such knowledge.

" The jury are to judge of the reasonableness of the defendant's apprehension of danger, from the testimony, and must be satisfied that they were well grounded.    *    *    *    *
The defendant insists that he was a duly appointed and sworn officer, and that as such officer he had the right to

arrest Brooks without a warrant, because he was in defendant's view, disorderly, cursing and swearing, in violation of an ordinance of the town. He insists that he did arrest Brooks, and had him lawfully in custody, and when he had him so arrested and in custody, the deceased, armed with a stick, attempted to rescue him, and to prevent the rescue, it was necessary for him to strike the deceased with the "billy," and that he did strike him, because it was necessary for him to do so. If you are satisfied beyond a reasonable doubt from the evidence, that the blow caused the death of the deceased, then, unless you are satisfied from the testimony, that it was necessary to prevent the deceased from rescuing Brooks, to strike the blow, you will find the defendant guilty, unless he struck the blow in self-defence.

"If the defendant was a policeman of the town, as he insists he was, the law clothed him with the same authority to make arrests within the town, as is vested in a sheriff, and if he could have kept Brooks in custody and prevented deceased from rescuing him without striking, it was his duty to do so. Were there by-standers? If so, he had authority to call them to his aid, and if by doing so he could have avoided striking the deceased, he should have done so, and if he failed to do so, he was not justified in striking the deceased, and it will be your duty to return a verdict of guilty; but if the situation was such that he could not reasonably and conveniently procure assistance, then he had a right to use such force as was necessary under the circumstances, to secure Brooks, and if in the due exercise of that right he struck deceased, he was justified."

There was a verdict of guilty, and from the judgment the defendant appealed.

*The Attorney-General*, for the State.
*Mr. Thos. M. Argo*, for the defendant.

DAVIS, J., (after stating the facts).   We have set out the charge of his Honor fully, because it was insisted by the counsel for the defendant, that being a policeman, clothed with the authority to arrest and detain the person violating the ordinance of the town of Bell's Ferry, he was the sole judge of the propriety and necessity of carrying him to the place of confinement, and of the necessity of using force to prevent his rescue, and of the extent to which it was necessary, and that the charge of his Honor failed to present to the jury a proper distinction between a homicide committed by a private individual, and one committed by an officer thus clothed with the authority, and charged with the duty of arresting and detaining violators of the law, and invested with the rights, within their discretion, to judge of the necessity and of the mode of confining such violators.

Upon a careful review of his Honor's charge, we are unable to discover any error of the nature complained of, and altogether it presents to the jury the rights and authority of the defendant as an officer, and the extent of his power, in as just and favorable light as he was entitled to.

The case of *State* v. *Stalcup*, 2 Ired., 50, was relied on by the defendant.   In that case it was held, that the officer was justified in tying a prisoner, when it was necessary to secure him, and of the necessity of adopting that mode of securing him, the officer was the judge, but in that case Judge GASTON said:   "He (the officer) will be liable, although he does not transcend his powers, if he grossly abuse them, and whether he did or not so abuse them, was the proper enquiry to be submitted to the jury.   Upon this inquiry, we hold that the instructions should have been   *   *   *   that there was an abuse of authority, if the facts testified to convinced the jury that the officer did not act honestly in the performance of duty according to his sense of right, but under the pretext of duty, was gratifying his malice, but if they were not so convinced, he did not abuse his authority."

Stalcup was a constable, and indicted for an assault and battery upon the prosecutor, whom he had tied as a mode of securing him, and of the necessity of adopting that mode he was the judge; but it was for the jury to say from the evidence, whether he was acting honestly and from a sense of duty, or under a pretext of duty. The law does not clothe an officer with the authority to judge arbitrarily of the necessity of killing a prisoner to secure him, or of killing a person to prevent a rescue of a prisoner. He cannot kill unless there is a necessity for it, and the jury must determine from the testimony, the existence or absence of the necessity. They must judge of the reasonableness of the grounds upon which the officer acted, and the charge of his Honor is fully warranted by the cases of *State* v. *Stalcup, supra*; *State* v. *McNinch,* 90 N. C., 696; and *State* v. *Pendergrass,* 2 D. & B., 365; and is a full and clear statement of the law as applicable to the several phases of the testimony in the case.

There is no error. Let this be certified.

No error.                                          Affirmed.