# Staunton.

## C. H. BOURNE v. JOHN W. RICHARDSON.

September 21, 1922.

1. ASSAULT AND BATTERY—*Plaintiff Shot by Police Officer when Attempting to Make an Arrest Without Warrant—Evidence as to Prior Conviction of Plaintiff—Harmless Error—Case at Bar.*—In an action against a policeman for malicious shooting in attempting to make an arrest, the defense relied upon was that defendant knew of plaintiff's former conviction for violation of the prohibition act and of a subsequent alleged violation of that law, and therefore believed in good faith that plaintiff was a felon, and was making the arrest for that reason. Defendant offered as proof of the first conviction an order of court showing that plaintiff pleaded guilty of a violation of the prohibition act, and over the objection of defendant plaintiff was erroneously allowed to explain his plea of guilty.

   *Held:* That the error was harmless because the jury clearly were not influenced by this explanation. At the time of the arrest defendant's knowledge of the previous conviction was unaffected by any attempted explanation by plaintiff as to why he pleaded guilty, and the jury could not have attached any importance to the subsequent explanation in determining the question of defendant's good faith in acting at the time on such knowledge.

2. ARREST—*Arrest Without Warrant—Felony and Misdemeanor—Case at Bar.*—In an action for malicious shooting by a police officer, the defense was that defendant attempted to arrest the plaintiff because he was drunk and disorderly, and also because he knew of his former conviction for a violation of the prohibition law, and of an unexecuted warrant against him for a further violation of the prohibition law, and therefore believed in good faith that he was guilty of a felony.

   *Held:* That if the jury believed that either or both of these reasons actuated the defendant in making the arrest, he would have been justified in proceeding without a warrant, but they evidently believed neither.

3. EVIDENCE—*Admissibility—Exceptions—General Objection to Admissibility of Evidence.*—Where an objection to certain testimony was entirely general, specifying no grounds, designating no particular portion of the evidence in question, and suggesting no restrictions upon its effect, if the evidence was admissible for any purpose the general objection to the whole was not good, and the exception to the action of the court in admitting the testimony must be overruled.

4. HEARSAY EVIDENCE—*Fact Attempted to be Established by Hearsay Evidence Admitted by Opposite Party.*—What officers arresting plaintiff said to him about the source of their orders was hearsay as an original proposition, but the plaintiff was relieved from proving that the defendant did as a fact telephone the officers to arrest and detain him by the admission of that fact in the testimony of the defendant.

5. ASSAULT AND BATTERY—*Malicious Shooting by a Policeman—Evidence as to Further Pursuit and Arrest of Plaintiff.*—Where plaintiff alleged that defendant had unlawfully and maliciously shot him, it was proper, as bearing upon the question of animus, to allow proof that defendant further pursued plaintiff and caused his arrest.

6. APPEAL AND ERROR—*Point Raised for the First Time on Appeal.*—A point not made in the court below cannot be availed of upon appeal.

7. ASSAULT AND BATTERY—*Malicious Shooting by Policeman—Inadmissible Evidence Ordered Stricken Out by Court.*—In an action for malicious shooting by a policeman in attempting to make an arrest, it was insisted that evidence with respect to the removal of the defendant from the police force some years prior to the trial on account of indiscretion and rashness was not only wholly irrelevant, but was of such a damaging character as that the action of the court in striking it out did not cure the error in its admission.

*Held:* That this position was without merit.

8. EVIDENCE—*Argument of Counsel—Direction to the Jury to Disregard Objectionable Evidence or Statements.*—There are cases in which the error of admitting improper testimony, or the effect of mere statements of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or statements. Such cases, however, are exceptions.

9. EVIDENCE—*Argument of Counsel—Direction to the Jury to Disregard Objectionable Evidence or Statements.*—A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts.

10. ARGUMENTS OF COUNSEL—*Objectionable Statements—Difference Between Counsel as to What Took Place—Exceptions, Bill of.*—In the instant case, in the petition for a writ of error, it was alleged that counsel for defendant in error had made an objectionable statement in open court in the presence of the jury. In the brief of counsel for defendant in error it was denied that this statement was made in the presence of the jury. The bill of exceptions on the subject contained no reference whatever to the statement.

*Held:* That the Supreme Court of Appeals could not undertake to settle this difference between counsel. If counsel for plaintiff in error intended to make a point of this incident, exception should have been taken at the time, and the facts in regard thereto should have been preserved in the record by a certificate of the trial judge.

11. ARREST—*Arrest Without Warrant—Burden of Proof—Instructions.*—In an action for malicious shooting by a police officer in attempting to make an arrest, the jury were instructed that the burden was on the defendant to show by a preponderance of the evidence that the arrest was by "authority of law." It was objected that the jury ought to have been told definitely what was meant by "authority of law." Other instructions given by the court informed the jury in an intelligent and practical way what constituted authority of law for the arrest of the plaintiff by the defendant.

   *Held:* That there was no error in giving the instruction in question.

12. ARREST—*Arrest Without Warrant—Instructions—Duty to Acquaint Party Arrested with Accusation—Case at Bar.*—In an action for malicious shooting by a police officer in attempting to make an arrest, the jury were instructed that it was the legal duty of an officer in making an arrest of an alleged offender, after he peaceably submits, to acquaint the party with the nature and character of the accusation. It was objected that there was no evidence in the instant case that plaintiff peaceably submitted to arrest. The evidence for plaintiff showed that after defendant laid hold on the plaintiff's coat and said, "I will have to arrest you," plaintiff made no effort to resist or escape until after he had peaceably asked about the warrant and the nature of the charges, and defendant had rudely answered that he had no warrant and did not have to specify any charge. The jury evidently believed that the testimony of the plaintiff was true.

   *Held:* That the plaintiff did peaceably submit, and having been pointedly refused the information as to the nature of the charges to which he was entitled, he had the right to make reasonable resistance.

13. ARREST—*Arrest Without Warrant—Instructions—Duty to Acquaint Party Arrested with Accusation—Harmless Error—Case at Bar.*— In the instant case it was objected to an instruction on the duty of an officer making an arrest to acquaint the accused with the character of the accusation against him; that it made it the duty of the officer to give such information whether requested to or not.

   *Held:* That this defect in the instruction was not harmful because the jury manifestly accepted as true the plaintiff's version of the affair; and this being true, the case must be considered as if the plaintiff did demand and was refused the information, and the omission to refer to that fact in the instruction was therefore immaterial. Furthermore, another instruction, not in any substantial conflict with the one in question, supplied the deficiency.

14. INSTRUCTIONS—*Instructions Must be Read in the Light of the Evidence.*— All instructions must be read in the light of the evidence, and if when so read they are not misleading, technical errors as to abstract propositions are not regarded as prejudicial. The sufficiency and correctness of an instruction depend largely upon the facts and nature of the case in which it is given.

15. ASSAULT AND BATTERY—*Exemplary Damages—Assault Unlawful or Malicious.*—Objection was made to an instruction in an action for malicious shooting that it told the jury that they might add exemplary damages if they should find that the assault was unlawful or malicious, whereas, if the assault was merely unlawful and not malicious, no such damages could be properly annexed.

*Held:* That, while if the expression "unlawful or malicious" stood alone and unexplained, the objection might have been serious, when the instruction is construed as a whole, it sufficiently conveyed the idea that the act must be both malicious and unlawful.·

16. APPEAL AND ERROR—*Instructions—Instructions Construed as a Whole.*— In every case where objection is made to an instruction of the lower court, the first point of inquiry is, whether the jury were misled; and this can be determined only by an inspection of the instruction as a whole taken in connection with the pleadings and the evidence, and if, when so construed, it appears probable that the jury were not misled, the judgment will not be reversed, although the instruction, in some of its parts, may not be strictly correct.

17. ASSAULT AND BATTERY—*Burden of Proof.*—In an action for malicious shooting, an instruction that the burden of proof was on the plaintiff to make out his case by a preponderance of the evidence is plainly correct and is favorable to the defendant, especially when emphasized by a subsequent expression which makes the plaintiff's recovery dependent upon the jury's belief from a preponderance of the evidence that defendant shot plaintiff without legal excuse therefor.

18. ASSAULT AND BATTERY—*Malicious Shooting—Burden of Proof.*—In an action for malicious shooting by a police officer in attempting to make an arrest, an instruction that the burden rests upon the defendant to sustain his allegations of a justifiable shooting is not error.

19. PRESUMPTIONS AND BURDEN OF PROOF—*Natural Consequences of Act— Civil and Criminal Cases—Prima Facie Case.*—Even in a criminal case, where the burden is on the Commonwealth to prove the charge beyond a reasonable doubt, there is a *prima facie* presumption that the accused intended the natural consequences of his act. The same presumption prevails in a civil case. Where the act forming the basis of the action was essentially wrongful, it is not necessary for the plaintiff, in order to make out a *prima facie* case, to show, by direct evidence, either an intention to commit the act or that the defendant was in fault. The proof of the wrongful act is sufficient proof of such matters.

20. ASSAULT AND BATTERY—*Justification—Burden of Proof.*—The assault or battery having been proved, it then devolves upon the defendant to justify or show facts in mitigation, and where he seeks to justify the burden rests upon him to show the justification, although a plea of not guilty is also filed, unless justification appears from the plaintiff's evidence.

Error to a judgment of the Circuit Court of Montgomery county, in a proceeding by motion for a judgment for damages.   Judgment for plaintiff.   Defendant assigns error.

*Affirmed.*

The opinion states the case.

*H. C. Tyler* and *Jackson & Henson*, for the plaintiff in error.

*Jordan, Roop & Sowder, John S. Draper* and *Harless & Colhoun*, for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a proceeding by motion instituted by John W. Richardson against C. H. Bourne to recover damages for the alleged unlawful and malicious shooting of Richardson by Bourne.   There was a verdict and judgment below for $3,000 in favor of the plaintiff, and the defendant assigns error.

The evidence was conflicting upon some material points, but as tending to support the verdict it may be fairly summarized as follows:

Bourne was a police officer in the city of Radford. Richardson was well known in that city, and bore the general reputation of being a "bootlegger."   On two separate occasions he had pleaded guilty to a charge of violating the State prohibition law, and had accordingly been convicted, once in the Circuit Court of Pulaski county and once in the Corporation Court of the city of Radford.   At the time of this shooting a warrant for his arrest for another violation of the prohibition law had been issued but not executed. This warrant, which made no reference to the prior convictions and charged merely a misdemeanor, was

in the hands of another officer. Bourne knew of the foregoing facts, but had never seen the warrant and did not know its precise purport. He testified that he had been advised by the Commonwealth's attorney of the city that because of the former convictions, he could lawfully arrest Richardson without a warrant. The attorney for the Commonwealth testified as a witness, having been placed on the stand by the defendant, but he was not asked any question by either side as to this alleged advice, and he made no statement in regard thereto.

The shooting occurred about eight o'clock in the evening. Bourne was on the street violating no law and creating no disturbance. His testimony as to the circumstances under which the shooting occurred is very well summed up in one of his answers as follows: "I was going down the street, met Mr. Bourne, we happened to meet up together. 'Mr. Richardson,' he says, 'I will have to arrest you.' I says, 'You are fooling, ain't you, Pat?' He says, 'No, I am not fooling.' I says, 'Where's your warrant?' He says, 'I don't have to have any.' I says, 'What's the charges?' He says, 'Don't have to have any.' At this time Bourne grabbed me right there, and drew the pistol with the other hand. I says, 'You got no warrant, I am not going with you,' and pushed off from him, and got away from him. Then he shot four or five shots at me, and the last shot he shot me; and I was in twenty feet, maybe a little more or a little less, the first shot that he shot at me."

Other witnesses for the plaintiff testified substantially to the same effect, one of them saying that Bourne took hold of the flap of Richardson's coat at the time of announcing his intention to make the arrest. The account of the shooting, as given by the

defendant Bourne, is altogether at variance and wholly irreconcilable in almost all respects with the account given by Richardson, but the apparent weight of the testimony is with the version given by Richardson, and the jury so found.

The shot which struck Richardson took effect in his right arm, causing painful and serious, and probably, permanent injury.    He sought medical treatment at a local hospital, and the physician there, after failing to locate the bullet, administered antiseptic treatment dressed the wound, and advised him to go immediately to a hospital in Roanoke where he could have an X-ray examination and expert treatment by a surgeon. Richardson did go to Roanoke on a train leaving shortly after the shooting, arriving there between eleven and twelve o'clock at night, but he was met at the station and arrested by Roanoke officers to whom Bourne had telephoned in accordance with advice which he testified was given to him by the Commonwealth's attorney.    No question was asked of the attorney for the Commonwealth upon this point when he was on the stand, and he made no statement with regard thereto.    The Roanoke officers would not permit Richardson to give bail and go to the hospital, but placed him in jail where he remained until the next afternoon when the sergeant of the city of Radford came and took him back to that city.    He was then allowed bail, and, after treatment by local physicians for some weeks, went back to Roanoke, where Dr. Trout made an X-ray examination and removed the bullet.

We come now to the assignments of error.

[1, 2] 1. The chief ground relied upon by the defendant to justify him in arresting the plaintiff without a warrant was that the latter had formerly been convicted of violating the prohibition law, and that the defendant,

having reasonable grounds for believing, and in good faith believing, that the plaintiff had committed a second similar offense, had the right to arrest him without a warrant on the theory that he was guilty of a felony.

In support of this position the defendant, during the cross-examination of the plaintiff, introduced in evidence an order of the Corporation Court of the city of Radford, dated November 10, 1919, showing that, upon a plea of guilty, a certain John W. Richardson had been convicted in that court on a charge of violating the prohibition law, and then asked the plaintiff whether he was the same John W. Richardson named in that order of conviction. The plaintiff admitted that he was the same man, and his counsel asked him to explain to the jury why he entered the plea of guilty. To this question counsel for defendant objected, but the court permitted the plaintiff to answer, and the substantial purport of his reply was that he was in fact not guilty and had so pleaded on his first trial when there was a hung jury, but subsequently, merely as a matter of economy, he pleaded guilty, finding that by doing so and paying a fine of $50.00 he could save an attorney's fee of $150, which his counsel would charge him for defending the case. (The order of conviction shows that the jail sentence was suspended during good behavior.)

It is insisted that the court erred in permitting this explanation by the plaintiff, and in this view we concur. The judgment of conviction was conclusive for the purposes for which the defendant offered it in evidence. But this error, in our opinion, cannot be regarded as prejudicial, because the jury clearly was not influenced by it. It did not enter into the decisive issue upon which the verdict necessarily turned, as will now appear.

The outstanding difficulty in the way of the defend-
ant in this case was the fact that he was not armed
with a warrant.  His defense was that he attempted
to arrest the plaintiff because he was drunk and dis-
orderly, and also because he knew of his former
convictions, and of the unexecuted warrant against
him for a further violation of the prohibition law, and
therefore believed in good faith that he was guilty of
a felony.  If the jury believed that either or both
of these reasons actuated the defendant in making the
arrest, he would have been justified in proceeding
without a warrant, but they evidently believed neither.
The alleged intoxication of the plaintiff depended for
its proof on the testimony of the defendant alone, and
was contradicted by much evidence to the contrary.
This branch of his case was very lightly touched upon
at the trial, and none of the seven instructions asked
for and given on his behalf placed any particular
emphasis thereon.  The defense really relied upon was,
as above indicated, that the defendant knew of the
plaintiff's former conviction and of his subsequent
alleged violation of the law, and therefore believed in
good faith that the plaintiff was a felon, and was
making the arrest for that reason.  The instructions
of the court specifically and emphatically told the jury
that if this contention was true, no warrant was
necessary.  The jury evidently did not believe that
he was telling the truth when he testified that he was
in good faith trying to arrest the plaintiff as a felon,
but their failure to believe this was manifestly in no
way brought about by the erroneous evidence here in
question.  At the time of the arrest the defendant's
knowledge of the previous convictions was unaffected
by any attempted explanation by Richardson as to
why he had pleaded guilty, and it would hardly be

29

reasonable to suppose that the jury attached any importance to this subsequent explanation in determining the question of Bourne's good faith in acting at the time on such knowledge as he then possessed. It is perfectly clear that the jury simply rejected his contention that he was arresting the plaintiff as a felon, and they undoubtedly did this because the evidence tended strongly to show that when the plaintiff was tried and acquitted shortly after the shooting upon a charge of resisting arrest, the defendant then claimed that he was arresting him for drunkenness, and made no reference to any felony charge. Jurors are presumed to be men of sense and integrity, and as such they could not, under the plain instructions of the court in this case, have found against the defendant upon the question of his *right* to arrest for the felony without a warrant if they believed his testimony. Upon this question, the subsequent inadmissible explanation of the plaintiff as to his former conviction could have had no effect. What the jury could and did do under the evidence and instructions, unaffected by the subsequent explanation, was to find that Bourne was not telling the truth when he said that he was in good faith proceeding to arrest Richardson for a felony. To make this clear, we set out here the instructions raising this issue before the jury and presenting to them the respective theories of the parties:

Plaintiff's Instruction No. 8: "The court instructs the jury that an officer of the law has no right to arrest anyone without a warrant, unless they are committing some offense in his presence, violating either a State or city law; or, unless the officer in good faith believes the party has committed a felony, and is arresting him for the commission of the felony; and

if the jury believes that the plaintiff, John W. Richardson, at the time he was attempted to be arrested was committing no offense in the presence of the officer, and if the jury believes that at the time C. H. Bourne attempted to arrest the said John W. Richardson, that he, the said C. H. Bourne, was not arresting him on any felony charge and did not have such a charge in mind, then the court instructs the jury that the said C. H. Bourne had no right to arrest the said Richardson, and the said Richardson had the right to resist the arrest or flee to prevent the same, and if the jury believes that the said C. H. Bourne shot the said Richardson without any authority as defined in these instructions to arrest him, then he is liable in damages to the said John W. Richardson."

*Defendant's Instruction No. 2:* "The court instructs the jury that a police officer has the right to arrest, and it is his duty, under the law, to arrest, without a warrant, any person who he has reasonable or probable cause to believe has committed a felony. And, if the jury shall believe from the evidence in this case that the plaintiff, Richardson, had been convicted of violating the prohibition law, and the defendant, Bourne, knew, or had been imformed of that fact, and the jury shall further believe from the evidence that the defendant, Bourne, at and prior to the time he attempted to make the arrest complained of, believed and had reasonable or probable cause to believe that plaintiff had been guilty of a second violation of the prohibition law by unlawfully selling liquor and was guilty of a felony, and that he was arresting him for the felony among other causes, then they are told that the defendant had the right to arrest plaintiff without a warrant."

The verdict shows that, both as to any offense

committed in defendant's presence and as to the suggested felony, the jury accepted the plaintiff's theory and version, and rejected the theory and version of the defendant, and there is no just reason to suppose that in doing this they were in any way influenced by the evidence in question. It is difficult to read the record without being satisfied that the defendant's present contention that he was arresting the plaintiff upon a felony charge was an afterthought and a pretext resorted to after he became satisfied that he could not safely rely upon his first position (that he was arresting the plaintiff for being drunk and disorderly in his presence), and this undoubtedly is the view which the jury took of the case.

Upon these considerations, we feel constrained to hold that, while the court erred in admitting the testimony, the error must be regarded as harmless.

It may be said before leaving this point that as to the order of conviction in the Pulaski Circuit Court, the plaintiff had previously, on cross-examination, made substantially the same explanation of his plea of guilty as in the Radford order, and did this, if not at the instance, at least with the acquiescence, of the defendant. It is insisted that, having previously invited this error in connection with the order in the Pulaski case, the defendant waived or rendered it harmless in regard to the Radford case, in accordance with the holding of this court in such cases as *Southern Ry. Co.* v. *Blanford's Adm'x,* 105 Va. 273, 387, 54 S. E. 1, and *Mohler* v. *Commonwealth,* 132 Va. 713, 111 S. E. 454. It is unnecessary, for reasons already appearing, for us to decide whether the principle of waiver here invoked applies in this connection.

[3-6] 2. The plaintiff testified that on his arrival at Roanoke he was arrested by officers who said they

had received orders by telephone from Radford officers to hold him for further orders; that they took him to jail, denied·him bail, and would not permit him to go to the hospital.    The court overruled an objection to this evidence, and the defendant excepted.    The complaint against this evidence stressed in the assignment of error is that it permitted the jury to consider the action of the Roanoke officers in refusing bail and denying the plaintiff the right·to go to the hospital. As shown by the bills of exception, however, the objection was entirely general, specifying no grounds, designating no particular portion of the evidence in question, and suggesting no restrictions upon its effect. If, therefore, we shall find that any part of it was admissible for any purpose, a general objection to the whole was not good, and the exception to the action of the court must be overruled.    *Sulphur Mines Co.* v. *Thompson's Heirs*, 93 Va. 293, 307, 25 S. E. 232; *Hardy's Case*, 110 Va. 910, 922, 67 S. E. 522; *Washington, etc., Ry. Co.* v. *Trimyer*, 110 Va. 856, 860, 67 S. E. 531; *Lynchburg Cotton Mills* v. *Rives*, 112 Va. 137, 140, 70 S. E. 542.    What the officers said to the plaintiff about the source of their orders was hearsay as an original proposition, but the plaintiff was relieved from proving that the defendant did as a fact telephone the Roanoke officers to arrest and detain him by the admission of that fact in the testimony of the defendant. The plaintiff's notice of motion alleged that the defendant had unlawfully and maliciously shot him, and there was abundant evidence tending to support that allegation.    This being true it was proper, as bearing upon the question of animus, to allow proof that the defendant further pursued the plaintiff and caused his arrest.    The arrest and detention in Roanoke was certainly a proximate result of the telephone

message, and to that extent the evidence was clearly free from objection. The point that the action of the Roanoke officers with reference to bail and the denial of the request of the plaintiff to be allowed to go to the hospital should not have gone to the jury, conceding that it was good, was not made in the court below, and under the authorities above cited cannot be availed of now.

[7-9] 3. During the cross-examination of the defendant, counsel for the plaintiff elicited from him the fact that some years prior to the trial he had been removed from the police force of the city of Radford by the mayor, and the line of cross-examination being pursued by counsel indicated a purpose to show that the removal had been on account of indiscretion and rashness. This testimony was objected to, but the objection was overruled. Later on during the trial the defendant by counsel moved to strike out all such evidence, and the motion was overruled. Still later, but some time before the conclusion of the evidence, the court reconsidered these rulings and struck out all of the evidence of the character here under consideration.

It is insisted that the evidence with respect to the removal of the defendant from the police force was not only wholly irrelevant, but was of such a damaging character as that the action of the court in striking it out did not cure the error in its admission. We cannot accede to this view of the question. As was said in the case of *Wash. & O. D. R. Co.* v. *Ward's Adm'r*, 119 Va. 334, 339, 89 S. E. 140, 142: "There are cases in which the error of admitting improper testimony, or the effect of mere statements of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or state-

ments.     Such cases, however, are exceptions, and we do not think this is one of them.     In the multitude of questions arising in jury trials, and in the zeal and earnestness of counsel, however well intended, it is practically impossible for the court to keep the case on trial at all times entirely free from minor irregularities and mistakes; and the course taken by the trial judge in the present instance is in accord with a common and widely approved practice.     A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party.     A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts."     See, also, *N. & W. Ry. Co.* v. *Steele,* 117 Va. 788, 86 S. E. 124; *Taylor* v. *Commonwealth,* 122 Va. 894, 94 S. E. 795.

[10] It is said in the petition for writ of error that after the court had ruled upon the question and had stricken out the former evidence on the subject, counsel for plaintiff "to further prejudice defendant's case before the jury, thereupon stated in open court in the presence of the jury as follows: 'I expect to prove on charges preferred by him (mayor of Radford) against Mr. Bourne as being generally incompetent as a police officer, unfit to be an officer and wanting in discretion, that he, the mayor, had him removed from office.' "

In the brief of counsel for the plaintiff it is denied that this avowal was made in the presence of the jury, the contention being that it was dictated to the stenographer reporting the case merely for the purpose of preserving the exception in the record to the ruling of the court.     However this may be, if it be conceded

that the point would be material, we, of course, cannot undertake to settle this difference between counsel, and the bill of exceptions on the subject contains no reference whatever to the avowal. If counsel intended to make a point of this incident, exception should have been taken at the time, and the facts in regard thereto should have been preserved in the record by a certificate of the trial judge.

4. The next assignment to be considered involves the instructions to the jury.

[11] (a) Instruction No. 1 given for the plaintiff was as follows: "The court instructs the jury that the burden is on the defendant to show by a preponderance of the evidence that the arrest was by authority of law."

It is said that this instruction ought to have told the jury definitely what was meant by "authority of law." The instruction, however, was dealing merely with the question of burden of proof, and stated the rule in regard thereto correctly. As applied to this case, instruction No. 8 for the plaintiff and instruction No. 2 for the defendant, quoted above in full, informed the jury in an intelligent and practical way what constituted authority of law for the arrest of the plaintiff by the defendant. The case of *Muscoe* v. *Commonwealth*, 86 Va. 448, 10 S. E. 534, is cited but is not in point as supporting this assignment of error. In that case the instruction condemned told the jury that they must decide from the evidence whether the arrest was unlawful or not, and left them without any satisfactory guide. As said by Judge Lewis in that case: "The court ought therefore to have explained to the jury what constitutes a legal arrest, and then have left it to them to say whether upon the evidence before them the arrest in question was legal or not. As it was,

they were left without any positive rule to guide them to a correct conclusion." In the instant case the two instructions to which we have referred met this difficulty.

[12] (b) Instruction No. 3, given for the plaintiff, was as follows: "The court instructs the jury that it is the legal duty of an officer in making an arrest of an alleged offender, after he peaceably submits, to acquaint the party he proposes to arrest with the nature and character of the accusation of the alleged crime for which he is going to arrest him, unless the offense be committed in the presence of the officer, and, unless the jury shall believe from the evidence that such crime was committed in the presence of the officer when he attempted to make the arrest, or that said officer apprised the plaintiff of a felony charge against him, then, in such circumstances, the said plaintiff had the right to use such reasonable force as was necessary to prevent the arrest, and the officer had no right to shoot the plaintiff to prevent his escape."

It is urged as the first objection to this instruction that there was no evidence to show that the plaintiff peaceably submitted to arrest. We do not think this position, upon a fair view of the evidence from the plaintiff's standpoint, can be sustained. It is true that the plaintiff was not effectually and permanently detained by the officer, and in that sense the arrest was not completed, but this would be true in any case where an officer orders an alleged offender to submit to arrest and the latter without resistance or refusal to submit asks for and is denied information as to the charge, and then resists and makes his escape. This is just what happened in this case if the evidence for the plaintiff is credited, because that evidence shows that

after defendant had laid hold on the plaintiff's coat and said, "I will have to arrest you," the latter made no effort to resist or escape until after he had peaceably asked about the warrant and the nature of the charges, and the defendant had shortly and rudely answered that he did not have to have any warrant or specify any charge.

If the testimony of the plaintiff is true, and the jury evidently believed it was, the plaintiff did peaceably submit to the officer's authority, and without show of resistance or refusal to accompany him, afforded the latter an opportunity to acquaint the plaintiff with the nature of the charges. Having been pointedly refused the information to which he had thus entitled himself, he had the right to make reasonable resistance. These conclusions are not in conflict with, but indeed necessarily follow from, the authorities cited on this point by counsel for the defendant, which are as follows: *Richards* v. *Burgin*, 159 Ala. 282, 49 So. 294, 17 Ann. Cas. 898; 5 C. J. 392; Idem 420, note bottom right-hand page; *Commonwealth* v. *Cooley*, 6 Gray (Mass.) 350; *U. S.* v. *Rice*, 27 Fed. Cas. 795, No. 16, 153.

[13, 14] The second objection urged against the instruction is that "it makes it the absolute duty of a known officer making the arrest to acquaint the accused party with the nature and character of the accusation of the alleged crime for which he is going to arrest him, whether such party requests such information or not."

Strictly speaking, the instruction should have conditioned the right of the plaintiff to be informed of the felony charge upon a demand by him for the nature of the accusation. This defect in the instruction, however, was not harmful to the defendant in this case for two reasons. In the first place, the respective accounts of the circumstances surrounding

the arrest given by the plaintiff and the defendant are, as already pointed out, so wholly at variance that it was impossible for the jury to reconcile them, and they manifestly accepted as true the plaintiff's version, and rejected the version of the defendant. This being true, the case must be considered as if the plaintiff did demand and was refused the information, and the omission to refer to that fact in the instruction is immaterial. All instructions must be read in the light of the evidence, and if when so read they are not misleading, technical errors as to abstract propositions are not regarded as prejudicial. As was said by this court in *Va. Ry. & P. Co.* v. *Smith & Hicks,* 129 Va. 269, 275, 105 S. E. 532, 534: "The sufficiency and correctness of an instruction depend largely upon the facts and nature of the case in which it is given."

A further reason why this second objection urged against instruction No. 3 is not good is that instruction No. 6, given for the defendant, not in any substantial conflict with the former, removed any such difficulty as the objection suggests. Defendant's instruction No. 6 was as follows:

"The court instructs the jury that if they believe from the evidence that the defendant had the right to arrest the plaintiff, then it was the duty of the plaintiff to quietly submit to arrest before demanding the cause, and if the jury shall believe from the evidence that upon the defendant attempting to arrest the plaintiff, and before the plaintiff submitted to arrest, the latter demanded the cause of the arrest, and refused to consider himself under arrest, then they are told that the defendant in no wise forfeited his right to the protection of the law by failing to notify plaintiff of the cause of his arrest, if they believe from the evidence that he demanded the cause."

With this and other instructions before them, the jury must have believed from the evidence that the plaintiff did quietly submit to the officer before demanding the cause of his arrest, and that he then demanded the cause thereof before making any resistance. Unless they did so believe, they could not have found for the plaintiff without violating the perfectly plain instructions of the court, and this they are presumed not to have done.

[15, 16] (c) The plaintiff's instruction No. 6 told the jury that "if they believe he was permanently injured, and if they further believe that the wound was unlawfully or maliciously inflicted, that they may add to their verdict such exemplary damages as they may deem reasonable by way of punishment to the defendant for the malicious and unlawful act." Complaint is made of this instruction because it tells the jury that they may add exemplary damages if they should find that the assault was unlawful *or* malicious, whereas, if it were merely unlawful and not malicious, no such damages could be properly annexed. In view of the seriousness of the injury as shown by the evidence, it does not seem very probable that much, if anything, was added to the verdict as punitive damages. Still, we cannot say that this instruction did not in some degree affect the result, and if the expression "unlawful or malicious" stood alone and unexplained, the objection might be serious. We are of opinion, however, that when the entire language of the instruction is construed as a whole, the jury could hardly have been misled to the prejudice of the defendant, because that portion of the instruction which says that the jury "may add to their verdict such exemplary damages as they may deem reasonable by way of punishment to the defendant *for the malicious*

*and unlawful act"* seems to be sufficient to convey the
idea that the act must be both malicious and unlawful
in order to warrant the finding of such damages.   The
principle applied by this court in the case of *Benn* v.
*Hatch,* 81 Va. 25, 35, 59 Am. Rep. 645, seems to us to
apply here.   In that case the court said: "In every
case where objection is made to an instruction of the
lower court, the first point of inquiry is, whether the
jury were misled; and this can be determined only by
an inspection of the instruction as a whole taken in
connection with the pleadings and the evidence, and
if, when so construed, it appears probable that the
jury were not misled, the judgment will not be reversed
although the instruction in some of its parts may not
be strictly correct."   See, also, to the same effect
*Dingee* v. *Unrue's Adm'x,* 98 Va. 252, 35 S. E. 794;
*Bolton* v. *Vellines,* 94 Va. 404, 26 S. E. 847, 64 Am.
St. Rep. 737.

[17-19] (d) The plaintiff's instruction No. 7, given
over the objection of the defendant, was as follows:

"The court instructs the jury that while the burden
of proof is on the plaintiff to make out his case by a
preponderance of the evidence; yet when he has so
made out his case, that then the burden rests upon the
defendant to sustain his allegations of a justifiable
shooting; and if the jury shall believe from a pre-
ponderance of the evidence that C. H. Bourne shot
John Richardson without a legal excuse therefor, that
you should find a verdict in favor of the plaintiff in
such sum as the evidence shows the said Richardson
has sustained damages, but not to exceed the sum
of ten thousand dollars."

We find no error in this instruction.   Its first
proposition, that "the burden of proof was on the
plaintiff to make out his case by a preponderance of

the evidence," is plainly correct and is favorable to the defendant; and this proposition is emphasized by a subsequent expression which makes the plaintiff's recovery dependent upon the jury's belief "from a preponderance of the evidence that C. H. Bourne shot John Richardson without legal excuse therefor." The part of the instruction complained of is that "the burden rests upon the defendant to sustain his allegations of a justifiable shooting."

If we correctly apprehend the contention of counsel for defendant, in their argument against the instruction, it is that the plaintiff could not make out a *prima facie* case simply by proving (as he did) that he was shot by the defendant, but that he had to go further and show circumstances attending the shooting which would show that it was unlawful. In this connection it is suggested that the act might have been accidental or justifiable, and the clear inference from the argument is that the burden was on the defendant to negative such possibilities. We do not think this is the law. Even in a criminal case, where the burden is on the Commonwealth to prove the charge beyond a reasonable doubt, there is a *prima facie* presumption that the accused intended the natural consequences of his act. The same presumption prevails in a civil case. "Where the act forming the basis of the action was essentially wrongful, it is not necessary for the plaintiff, in order to make out a *prima facie* case, to show by direct evidence either an intention to commit the act or that the defendant was in fault. The proof of the wrongful act is sufficient proof of such matters." 2 R. C. L., p. 575, sec. 56.

[20] In 5 C. J., p. 664, the text says: "The assault or battery having been proved, it then devolves upon the defendant to justify or show facts in mitigation,

and where he seeks to justify the burden rests upon him to show the justification although a plea of not guilty is also filed, unless justification appears from the plaintiff's evidence."

For the reasons stated, we are of opinion that the judgment complained of must be affirmed. It is to be regretted, of course, that any officer, claiming to have acted in the discharge of his duty, should be required to pay damages for injuries which he has inflicted upon an alleged offender. We must remember, however, that if the testimony of the plaintiff in this case is true—and the jury could not have found the verdict unless it accepted that testimony practically *in toto*, and likewise rejected the defendant's evidence—then the officer in this case acted unlawfully and wilfully, and the judgment is a righteous one. Officers of the law must be accorded the fullest protection in the discharge of their duties, but the liberty of the citizen is of equal importance, and nothing can so militate against the effective administration of justice and a proper regard for the law of the land as unlawful and reckless conduct on the part of officers who are charged with its enforcement.

*Affirmed.*